The next case on for argument is Atkins v. Rochester City School District. Good morning, your honors. Michael Confusio for the appellant. Good morning. Good morning. I'd like to reserve two minutes of rebuttal. You may. I'm asking that the court reverse the grant of summary judgment and remand it. I don't think the court should remand it for a trial, however. I think the summary judgment analysis probably has to go further. And the reason why I say that is because the argument at the district court and the district court's ruling focused on this initial prima facie case of age or race discrimination. And it's a, you know, the court has said a lot that it's a de minimis burden. There were two prongs that the district court said were not met, even under the de minimis standard. The first one I think is kind of easy to look at because the judge said there was no adverse employment action. But if you look, and I agree that under the law, just getting a bad score, so to speak, is not adverse employment action. But if you look at even A222, which is part of the plaintiff's deposition, she explains that because she got this bad score, she was assigned to another, she said, less desirable position, which wound up being another failing school. It was an elementary school. So the score itself is connected to an adverse employment action. And under the de minimis burden standard, I think that's sufficient for a prima facie case. If it was because of a low score, why is that discriminatory? Assuming for a moment the test was fair, low score, fired, where does the discrimination come from? Well, I think then we have to go to the fourth prong. So I would say, Your Honor, under the third prong is literally just did you get any kind of an adverse employment action. Well, that's not our jurisprudence. Okay. So you concede that your argument doesn't work? No. Well, I would say the discrimination part comes in under the fourth prong. It has to be that the adverse employment action came about in some circumstance that could give rise to an inference of discrimination. You need to have an adverse employment action, and there is some bar, I believe our jurisprudence is, that says that merely transfer, probably even a bad letter, a disciplinary letter in your file, that's not sufficient to raise the inference of adverse employment. Well, I agree with that. No, I agree with that, Your Honor. But, again, I think this record, again, viewed on the somber judgment standard especially, shows that she went to a different school and it was a less desirable administrative position. Did she get a reduction in pay? I don't think she got a reduction in pay. Did she get a reduction in benefits? No, I don't think she got a reduction in pay. Are those the things that we look at? No, not entirely. I think adverse material change can be that if you're a principal and you go to a school that's less desirable to work at than another school, I think that's sufficient for an adverse material circumstance under the case law. Determination being in the eye of the beholder. Well, again, I mean, I think if we're looking at it. I'm happy to be at that school because I can walk to it from my house and I don't have to drive through three hours of traffic to get to where I was originally. No, I understand what you're saying, but I would view it in this way. I mean, if we're looking at it on a somber judgment standard, I think you have to look at the way the plaintiff articulates it and what the plaintiff said. And if you do that and you look at her deposition testimony and affidavit, I think that's enough to meet this de minimis burden. If it's truly a de minimis burden, it's a pretty low standard to meet a prima facie case. And I think in that regard, and again, that's what the district court dismissed it on. That it wasn't adverse. That it wasn't adverse even for a prima facie case. And I think that's a very low threshold. From your client's perspective, that's the sole issue in front of us. Well, that's the one issue. That's the one you've got to clear first before we look at anything else. I agree, Your Honor. If I lost on that, I should lose and you should affirm. Can I just ask you why you think that Sandra Jordan was a good comparator to show that a white person was treated differently than an African-American person? Well, I know the judge basically said, you know, they're really not the same because they were both principals. But one was a principal of a program. One was a principal of a school. But they still both worked for the same underlying district. They were both, I mean, even when the defendant talks about them, you know, she said, well, six people appealed their APPR scores. They were both principals. I think that they were . . . The basis for their appeals were quite different, weren't they? According to the defendant's evidence, the defendant said that Jordan's appeal showed that her score should have been improved. I think, though, what's significant, Your Honor, is even the district court notes, this is on page five of the district court's decision, you know, when my client appealed, it's not like the district said, oh, there wasn't anything wrong with it. What happened was the district actually found in the appeal process that there were errors. The record does show that. And this is on page five of the opinion. That there were errors in the way the score was calculated, but the defendant said the change in score would not have been sufficient to raise her overall rating. Doesn't that matter? It could matter if we were kind of at the end stage of the case. But, again, I think the fact that procedurally, from a procedural posture standpoint, because we're at the de minimis burden standard, I think that even that is enough. And I think, Your Honor, to answer your question about the comparison, I think the fact that she was younger and Caucasian and a principal, I understand that she wasn't a principal of maybe she was a program instead of a school. But even from my reading of the record, there's a lot of different schools and programs. And it seems like almost like I guess it's something I'm not used to entirely. Did you concede Judge Sack's question about whether if she was right, if her client was right, it still wouldn't have changed her rating to effective? That's what the defendant says. That's what the court said, too, right? Well, the court said that because the court was basically quoting what the defendant's evidence said. But I think what you disagree with that? Do you think that's not true? We would have been into the effective category. Well, I think that part isn't necessarily dispositive. I think what counts is that the score, after the score, she was then assigned to the elementary school that she said was a less desirable position. So whether or not the score would have changed, the fact is the score she got resulted in adverse employment action. And again, I come back, I know I'm hounding the same thing. But if it's truly a de minimis burden, that's what the court really has to look at. Did the district court properly say this doesn't even meet the de minimis burden? I think what I would say is, you know, I think the court should remand it back to the district court. And first of all, I would say that, and I know my time's running out, but even if you just limited it to what the defendant says the case is about, which is the APPR score, and that they were improperly calculated, I think there's enough there to get past the prima facie case. And I think the district court should have gone on to evaluate and allow supplemental briefing on remand about whether or not there was enough evidence there to essentially get to a jury trial. I don't think the court should reverse and remand it for a jury trial, because I don't think that would be fair for me to ask. I don't think the procedural posture is high enough there for that. But I do think that there was a summary judgment analysis that was left out. And that doesn't even get into this evidence that I know I argued the district court improperly didn't consider. I see my time's up, and I'll reserve for a little while. Thank you, Your Honor. Thank you, Mr. Confusio. Ms. Moyer? Good morning, Your Honors. It's a pleasure to be here today. The clearest example why the district court granted summary judgment is the APPR process itself. It's governed by Education Law 3012C, and that law went into effect in 2010 to govern the 2012-2013 school year. Ms. Atkins' performance evaluation, as well as every other principal in the district, was governed by the Annual Profession Performance Review, APPR. For the first time, using those state metrics in 2012-2013, the state growth score is one-third of the component, and that state growth score was, by statute, the Common Core test scores, essentially, for all students in the district assigned to different schools and programs. The APPR rating was developed through an agreement with ASAR, which is the Union for Principals, the Association of Supervisors and Administrators of Rochester. ASAR and the district came to an agreement that went into effect on July 10, 2012, and that APPR agreement determined how state growth scores should be added together to have equal weight with local measure scores and other measure scores to come up with a score and a rating for each principal. Could I just ask you about the significance of this in terms of adverse employment action? Sure. I've got a particular question I want to ask you. The section you cited, 3012C1, says that those ratings shall be a significant factor for employment decisions, including but not limited to promotion, retention, tenure, determination, termination, and supplemental compensation. This plaintiff also was put on a principal improvement plan and transferred to another school. Why isn't all of that together an adverse employment action? Here, Ms. Atkins was given a developing rating like many other principals in the district that year. The formula was applied equally to her and all other principals. The evidence that it was applied equally to her to give her the developing rating is best shown by the fact that Sandra Jordan, a Caucasian woman, also . . . Well, I'm not asking about whether she was discriminated against. I was asking about whether that rating, it could be an adverse employment action. What we were talking about with opposing counsel, is it significant enough to be an adverse employment action? Because as Judge Hall pointed out, there's cases that say that it has to be more than just a performance review to constitute adverse employment action. So why is it not here, given the regulations of the State of New York? Ms. Atkins' performance review, Your Honor, did not materially change or make adverse any of her working conditions, which would be a requirement for it to be an adverse employment action. She did receive the developing rating, but there was no principal improvement plan connected to that. The reason for that, and this is in the record as well as her deposition testimony, is Ms. Atkins was notified in March of 2013, approximately two months before the students even took the scores that were used to make the rating, she was notified that her school would be closing. She was notified that she was going to be moving to a different school, and she was placed into that school to begin on July 1st. She received the rating in September. What about the PIP? When was that imposed? It was not imposed, Your Honor. At all? No. The schools at that point in Rochester, there were several that closed that year, I believe, and that performance plan and the requirements that were ancillary to that were not imposed on Ms. Atkins. There's no allegation that they were. So no PIP, no school to stay at. Correct. She continued to be employed as a principal, albeit at a school that needed a principal. Yes. And the CBA, which incidentally is not also attached as part of the record here, but the APPR agreement is, the CBA provides that teachers have no right to specific postings. Principals, teachers. There is the letter you pointed out that says, you will continue to follow the principal improvement plan put into place at the beginning of the school year. Did you say she was never put on a PIP? No, Your Honor. What did you say about that then? I'm not aware why the letter says that, Your Honor, but the evidence in her deposition testimony establishes that she was not imposed that requirement. Okay. Thank you. So essentially, again, the district scores were imposed on all of the principals equally. The other thing that was equal to everyone was the appeal process, of which the district was one member out of three. The Azar and the neutral party are not part of this litigation, but the three of them equally agreed that unfortunately, because of the students' test scores in Ms. Atkins' elementary school, the ones that she contended should be put in and taken away were only several students versus Ms. Jordan's 200-some students, and therefore it couldn't raise her score from a 1 to a 7. But again, the analysis that was done by the appeals panel was the same for Ms. Jordan as for Ms. Atkins. And as my adversary is not contesting the fact that the other issues should not be considered, if it's not remanded here, then we are going to rest on the papers. Thank you. Thank you, Ms. Moyer. Mr. Confuciano, you reserve two minutes for rebuttal. Just very briefly. I mean, as far as the adverse employment condition, I mean, I think if the court looks at, again, I think it's A-222 is the deposition testimony, so it's a fairly straightforward thing. It either cuts it or it doesn't from a pronotation standard. How do we factor in the school closure? It's not like they can put her back where she has always been. They don't have a school there. Yeah, well, it's kind of a weird – You're not asserting that the school was closed in order to make her move, are you? No, I don't think so. I think – I mean, the way I read the summary judgment record is she was already out of school. She didn't want to be at in the first place, which was this Freddie Thomas. Then she was given this APPR score, I guess based on her performance at the school. That she didn't want to be at. That she didn't want to be at. Then the score came out in September, but I assume the score was – I don't – the record doesn't show when it was started to be calculated. But in other words, she was taken from the Freddie Thomas and then moved to an even less desirable position. Again, according to my – Did you have a chance to ask about that timing and discovery so that that factor could have been in front of you? Well, I wasn't the trial lawyer, Your Honor, so – Did the counsel for her at the time have a chance to ask about that? He had ample time for discovery, so I would say yes. Okay. Yeah, no, there's no – You didn't inquire into the exact timing of when anybody – It didn't look like it. Yeah, it didn't look – it looks like we're kind of void on that part. But on the inference of discrimination, the only other thing I would say is, if you look at the page 23 of the district court's opinion, the judge does talk about Sandra Jordan and that – whether or not that's right or wrong on the prima facie standard is fine. But the plaintiff's evidence actually does have a little bit more than that. And I talked about this, I guess, on page 24 of my brief, that there were other comparators that the plaintiff's testimony talked about that were also principals and that were either younger or not African American that my client said were treated more favorably than she was. And again, on a de minimis standard, I think that that's really where my argument lies. I know I'm out of time. The only thing I wanted to point out about the issue about the affidavits and the evidence, if it's an affirmative defense or like an affirmative defense, which I think the court kind of said it was because it was waivable by the defendant, then the issue is whether or not the defendant should have raised this earlier than in the summer judgment motion. The only thing I would point out is this. They filed an answer in September 2015, the record shows, and then they took the plaintiff's deposition in June of 2016. Summer judgment wasn't until November. And I mean, there was never a time where the defendant tried to come in and amend the answer or raise this exhaustion requirement defense in any way until the summer judgment motion, which at that point it was too late. So that would be the only thing I would note. Thank you for hearing the case, Your Honors. Thank you. Thank you both. We'll reserve decision in this case.